OPINION
Defendant-appellant Norman Thompson appeals to this court after he pled no contest to driving under the influence in the Belmont County Court, Northern Division. Appellant mainly contends that the court erred in failing to suppress the results of a urine test. He also complains that he pled to the wrong type of driving under the influence charge. For the following reasons, the decision of the trial court on suppression and appellant's conviction are affirmed.
 STATEMENT OF FACTS
On October 30, 1999, appellant was driving a "trike" (a homemade three-wheeled vehicle with a Volkswagen motor) on County Road 14 in Belmont County, Ohio when he lost control around a curve, crossed the oncoming lane of traffic, and flipped the vehicle into a ditch. An ambulance took appellant and his passenger to the hospital. Trooper Jeff Herink of the Ohio State Highway Patrol responded to the scene, determined to whom the vehicle was registered, and then, proceeded to the hospital to issue a citation for failure to control in violation of R.C.4511.202. At the hospital, appellant admitted that he had been driving the vehicle.
During the conversation, the trooper came to the realization that appellant was highly intoxicated. The trooper described appellant as stumbling, leaning to keep his balance, barely able to walk, rambling, and smelling strongly of alcohol. Appellant signed a statement that admitted to drinking before the accident and also claimed consumption after the accident. The trooper administered the horizontal gaze nystagmus test, and appellant failed all six clues representing indicia of intoxication. Appellant consented to a portable breath test which registered .28. He also consented to a urine test, the results of which later established an alcohol concentration of .331 grams per 100 milliliters of urine, which is more than twice the legal limit. A charge of driving under the influence in violation of R.C. 4511.19(A)(1) was placed on the citation along with the failure to control violation.
Appellant filed a motion to dismiss and/or to exclude evidence on three grounds. First, he alleged that the state cannot establish that he operated the vehicle within the two-hour period before the urine test. Second, he stated that he consumed alcohol before the urine test but after the wreck. Third, he argued that the trooper lacked reasonable grounds to believe that he was driving under the influence and claimed that there was no evidence of impaired driving. A suppression hearing was held on January 19, 2000, after which the court overruled the suppression motion.
Appellant's attorney then stated that appellant would plead guilty to R.C. 4511.19(A)(3) if the state would amend the charge to allege this violation. Apparently, the state had not yet amended the officer's original impaired driving charge under R.C. 4511.19(A)(1) to add a charge for the urine content after the test results came back. The state then asked to amend as requested by appellant, and the court consented. Appellant pled no contest to R.C. 4511.19(A)(3), and he was sentenced accordingly.
Appellant filed timely notice of appeal, which we dismissed in March 2001 for failure to file a brief. We then reinstated the appeal in May 2001 upon appellant's petition. In just over three pages, appellant sets forth five assignments of error for our review.
 ASSIGNMENT OF ERROR NUMBER ONE
Appellant's first assignment of error alleges:
 "THE COUNTY COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS BASED UPON THE STATE'S FAILURE TO ESTABLISH THAT THE ARRESTING OFFICER HAD PROBABLE CAUSE TO ARREST APPELLANT OR REASONABLE GROUNDS TO HAVE APPELLANT SUBMIT TO A URINE TEST."
The determination of weight of the evidence and credibility of the witnesses at a suppression hearing is the province of the trial court who occupies the best position to view the witnesses' demeanor, gestures and voice inflections. State v. Treesh (2001), 90 Ohio St.3d 460, 472
(stating that the same deference is paid to a court hearing evidence at a suppression hearing as at trial). See, e.g., State v. Mills (1992),62 Ohio St.3d 357, 366; State v. DeHass (1967), 10 Ohio St.2d 230, 231. The appellate court generally defers to these findings of fact, and then independently determines as a matter of law whether the facts as found by the trial court meet the applicable legal standard. State v. Earich
(Mar. 29, 2001), Columbiana App. No. 00CO21, unreported.
In the text of the assignment of error, appellant claims that the officer did not possess probable cause to arrest appellant or ask that he submit to a urine test. This argument is without merit. The trooper testified that he responded to the scene of the accident and saw a trike which was flipped into a ditch. He discovered that appellant was the registered owner. Appellant admitted that he was driving when he lost control around a curve. (Tr. 30). As a citation was being issued for failure to control, the trooper noticed that appellant exhibited multiple signs of intoxication. He smelled strongly of alcohol, he rambled, and he could not walk well as he kept stumbling on the sidewalk and leaning on the cruiser to keep his balance. (Tr. 33). As an aside, although the trooper did not mention it at the hearing, appellant's brief concedes that his eyes were glassy and his speech was slurred. Moreover, appellant exhibited all six clues on the horizontal gaze nystagmus test. The trial court properly found that these factors constituted probable cause to believe that appellant was driving under the influence of alcohol. See,e.g., Id.; State v. Quesenberry (May 24, 2001), Belmont App. No. 99BA39, unreported.
Under this assignment of error, appellant also raises the argument that an officer may not make a warrantless arrest for a misdemeanor unless that misdemeanor was committed in the officer's presence. First, we note that this argument must be separately assigned as an error, or at least, the text of the actual assignment should relate to this issue. App.R. 12(A)(2); 16 (A)(3), (4), and (7).
Next, we note that appellant did not raise this argument below. None of the arguments set forth in the suppression motion can be construed as arguing an arrest in violation of statute. In fact, appellant does not even cite the statute, R.C. 2935.03, which provides that a person "found violating" the law may be arrested without a warrant. Regardless, appellant's argument is without merit.
In general, the "found violating" language of R.C. 2935.03 requires a misdemeanor to have been committed in the presence of law enforcement officers before the offender can be arrested without a warrant. State v.Mathews (1976), 46 Ohio St.2d 72, 75-76. However, the Supreme Court of Ohio recognizes an exception in driving under the influence cases. Statev. Henderson (1990), 51 Ohio St.3d 54, 56; City of Oregon v. Szakovitz
(1972), 32 Ohio St.2d 271. These cases hold that the officer need not personally witness the defendant driving. If "the officer has probable cause to believe that the suspect was operating a motor vehicle while under the influence," then the officer may properly arrest the suspect without a warrant. Id. The trial court must determine whether the surrounding circumstances, including the defendant's admissions, would lead a reasonable person to conclude that the defendant was driving under the influence. Id.
In this case, appellant admitted that he drove the vehicle. The officer witnessed the scene of the accident and deduced that the trike crossed an oncoming lane of traffic before flipping into a ditch. To investigate this failure to control, the officer proceeded to the hospital, where appellant had been transported in an ambulance. We should note that issuing a citation is not an arrest for purposes of the warrantless arrest statute. State v. Darrah (1980), 64 Ohio St.2d 22, 26. When the officer approached appellant to cite him for failure to control, the remaining probable cause requirements were soon satisfied due to the indicia of intoxication as analyzed supra. For the foregoing reasons, the trooper had probable cause to believe that appellant operated a vehicle while under the influence of alcohol. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error contends:
 "THE COUNTY COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS OR EXCLUDE FROM EVIDENCE THE URINE TEST RESULTS BASED UPON APPELLANT'S CONSUMPTION OF ALCOHOL AFTER OPERATING THE MOTOR VEHICLE BUT PRIOR TO THE URINE SAMPLE BEING TAKEN."
The second branch of appellant's suppression motion alleged that the case should be dismissed or the urine test excluded because appellant consumed "a sizable amount" of alcohol after the accident but before the urine test. On appeal, appellant directs this court to a "traffic crash witness statement" in which appellant admits he flipped his vehicle, admits to consuming "one or two" drinks before the crash, and claims that he consumed "a couple at the hospital."
Initially, we note that if the trial court had considered this statement and believed appellant, that he only had "a couple" drinks at the hospital, not "a sizable amount" as his motion claims. Regardless, this statement was not admitted at the suppression hearing, nor was it mentioned. In fact, no evidence was presented at the suppression hearing on appellant's alleged consumption of alcohol after the accident.
Even assuming the issue is one which can be decided at a suppression hearing, appellant's mere allegation cannot be determined as a matter of law before trial. Appellant would have us adopt a blanket rule that if a defendant leaves the scene of an accident before an officer arrives, any test results are invalid as long as the defendant merely files a motion that alleges consumption after the accident; credibility would not be a consideration but the defendant would be presumed to be telling the truth. Such a rule would create a race to the nearest bar after every alcohol-related accident. As previously stated, credibility is an issue primarily for the trier of fact, both at a suppression hearing and at trial. The question is where the issue of postaccident alcohol consumption should be raised.
The exclusionary rule is invoked only when constitutional rights are violated. City of Hilliard v. Elfrink (1996), 77 Ohio St.3d 155, 158. The Supreme Court of Ohio, however, has carved out an exception in cases where the defendant in a driving under the influence case is challenging the accuracy of the results of an alcohol concentration test due to failure to substantially comply with Ohio Department of Health regulations. City of Defiance v. Kretz (1991), 60 Ohio St.3d 1, 4. Id. at 3. This exception has been limited to a "Kretz-type case" and has been described as "a specific narrow departure" allowed for "pragmatic reasons" which "must be narrowly construed." Elfrink,77 Ohio St.3d at 158 (refusing to apply the Kretz exception to a case where the officers failed to inform the defendant about the statutory right to an independent test).
The case at bar is distinguishable from Kretz. Appellant does not allege a lack of compliance with regulations which would produce an inaccurate reading. Rather, he claims that his results were so high because he consumed alcohol in the hospital after the accident. This is a question of weight; it is not a question of admissibility. See State v.Jarvis (Sept. 8, 1997), Belmont App. No. 95BA10, unreported, 3 (where we stated that the defendant's claim that he drank a substantial amount of alcohol after the accident in order to dull his facial pain is a matter of weight of the evidence). See, also, State v. Hall (Aug. 4, 2000), Erie E-98-088, unreported, 13.
For the foregoing reasons, the court did not err in failing to dismiss the charge or in failing to exclude the urine test from evidence based upon a motion's allegation that appellant consumed alcohol in the hospital. Accordingly, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER THREE
Appellant's third assignment of error argues:
 "THE COUNTY COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS OR EXCLUDE FROM EVIDENCE APPELLANT'S URINE TEST RESULT DUE TO THE STATE'S INABILITY TO ESTABLISH THAT APPELLANT'S URINE SAMPLE WAS TAKEN WITHIN TWO HOURS FROM THE TIME APPELLANT OPERATED HIS MOTOR VEHICLE."
Pursuant to R.C. 4511.19(D)(1), the court may admit evidence on the concentration of alcohol as shown by chemical analysis of the defendant's bodily substance withdrawn within two hours of the time of the alleged violation. The trooper testified that he collected the urine sample at 9:00 p.m. on October 30, 1999. Appellant states that the testimony of his witness, the passenger at the time of the accident, establishes that the accident occurred between 6:42 and 6:52 p.m. He criticizes the testimony of the state's witness, Mr. Simpson, as being an estimate and concludes that the urine test should be excluded as it was taken more than two hours after the accident.[1]
Mr. Simpson was a resident of County Road 14 who testified that he heard the accident occur at approximately 7:15, give or take five or ten minutes. (Tr. 12). The state bolstered the accuracy of Mr. Simpson's estimate by submitting a record of hours worked submitted by this witness from the day in question. This document and Mr. Simpson's testimony established that he worked until 6:30 p.m. He then fed the cows and otherwise took care of his animals for approximately fifteen minutes before driving the .2 miles home. (Tr. 11). Once at home, Mr. Simpson ate supper. He heard the crash as he was getting up to help his wife clean the table. He then proceeded to the crash site and saw appellant and his passenger laying in the ditch. The trooper testified that he was dispatched to the scene at 7:30 p.m. and arrived at 7:47 p.m.
Appellant's passenger testified that they had been drinking at a bar prior to the crash. He could not remember how much he drank but estimated that he consumed four or five drinks. He opined that they left the bar around 6:32. (Tr. 42). At the prompting of counsel, he agreed that the accident occurred between 6:42 p.m. and 6:52 p.m. (Tr. 43).
The trial court specifically stated that Mr. Simpson, a disinterested witness, was more credible than appellant's passenger who was under the influence of alcohol at the time of the accident. The court believed that Mr. Simpson's original estimate of 7:15 p.m., give or take five or ten minutes, was trustworthy and thus placed the urine withdrawal within the two hour time limit. There is no reason for this court to second guess this credibility determination of the trial court. See Mills,62 Ohio St.3d at 366; DeHass, 10 Ohio St.2d at 231. As such, this assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER FOUR
Appellant's fourth assignment of error provides:
 "THE COUNTY COURT ERRED IN OVERRULING APPELLANT'S MOTION TO DISMISS OR EXCLUDE FROM EVIDENCE APPELLANT'S URINE TEST RESULT DUE TO THE STATE'S INABILITY TO ESTABLISH THAT APPELLANT'S URINE SAMPLE WAS THE SAMPLE ANALYZED BY THE STATE CRIME LAB."
As aforementioned, the trooper testified at the suppression hearing that he collected the urine sample from appellant at 9:00 p.m. on October 30, 1999. Appellant concedes that the accident occurred after 6:30 p.m. on that date. During cross-examination, the defense directed the trooper's attention to the certified laboratory report. This report states that the trooper collected the sample at 9:00 a.m. on October 30, 1999, rather than 9:00 p.m. The trooper opined that it was a typographical error on the lab's part. (Tr. 36-38).
At the end of trial, the court stated that due to the new information about the discrepancy in the lab report's transcription of the collection time by the trooper, appellant would be given an opportunity to file a motion on that issue. The court stated that the suppression motion on file did not mention this issue and thus the state had no opportunity to call witnesses from the lab. (Tr. 48-49). See State v. Viel (June 29, 2000), Belmont App. No. 98BA43, unreported, (stating that the defendant has the initial burden to put the state on notice of the issues to be addressed at the suppression hearing by setting forth specific allegations in the motion). In response, defense counsel specifically stated that he "just wanted to see if the state had a position" on the transcription error. (Tr. 51).
After both the court and the state urged defense counsel to submit a motion, he spontaneously recommended that the state accept a no contest plea with a reservation of questions of law for appeal and that the state dismiss the failure to control charge. (Tr. 51-53). The case was then set for a plea and sentencing hearing. A no contest plea was entered, and no motion was ever filed concerning the issue of the time discrepancy.
We note that the trooper was the person who collected the sample from appellant, not the lab. The trooper testified that he collected it at 9:00 p.m. Everyone agrees that he could not have collected it an 9:00 a.m. The trooper opined that the lab transcribed the date incorrectly in a typographical error.
Regardless, appellant clearly waived any argument by failing to follow the court's instruction to file a motion on this issue which would give the state notice and an opportunity to present other relevant testimony at a rescheduled suppression hearing. City of Xenia v. Wallace (1988),37 Ohio St.3d 216, 218 (stating that a failure to raise the basis of a suppression challenge constitutes waiver of the issue on appeal). In accordance, this assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER FIVE
Appellant's fifth assignment of error provides:
 "THE COUNTY COURT ERRED IN FINDING APPELLANT GUILTY OF A VIOLATION OF R.C. 4511.19(A)(3) BECAUSE NO BREATH TEST RESULT WAS ADMITTED INTO EVIDENCE."
Appellant notes that, since he submitted to a urine test, he was never asked to take a breathalyzer and no such test was performed. He thus briefly claims that the state erroneously amended the charge to add a violation of R.C. 4511.19(A)(3) and the court erroneously found him guilty of that section.
The trooper initially charged appellant under R.C. 4511.19 (A)(1). As he had to wait for the urine test results, he could not also charge appellant under R.C. 4511.19(A)(4), dealing with a prohibited level of alcohol in urine. Appellant pled no contest to R.C. 4511.19(A)(3), which deals with a prohibited level of alcohol in breath. We note that appellant did take a portable breath test which produced a .28 alcohol concentration reading. Appellant states that because he was subject to a urine test rather than a breath test, the court could not find him guilty of R.C. 4511.19(A)(3). However, this is clearly a case of invited error.
The first person to ever mention (A)(3) was defense counsel. Initially, at the suppression hearing, he stated that his client wished to plead no contest to (A)(3). (Tr. 51). He then complained that the citation did not contain a charge under (A)(3) but only a charge under (A)(1). (Tr. 53). The case was then set for pretrial. At pretrial, the state then complied with counsel's request and moved to amend to add a charge under (A)(3). (Plea Tr. 3). Appellant then pled guilty to this charge.
It is obvious that defense counsel erred in referring to (A)(3) rather than (A)(4). It is also obvious that the state and the court then made the same mistaken reference after being induced to do so by defense counsel. A defendant may not take advantage of an error which he himself invited or induced, i.e., a defendant cannot ask a court to do something and later claim that the action was erroneous. State v. Campbell (2000),90 Ohio St.3d 320, 324. See, also, State ex rel. Beaver v. Konteh
(1998), 83 Ohio St.3d 519, 520 (stating that a defendant who is charged with murder but is convicted of felonious assault after defense counsel asked for a felonious assault instruction invited any error on the argument that felonious assault is not a not a lesser included offense of murder).
Moreover, we fail to see how appellant was prejudiced. In moving to amend, the state specifically stated that the plea would be based on the urine test. (Plea Tr. 3). The court expressly mentioned that the plea was being made because appellant wanted to appeal the suppression issues, which were mainly based on the urine test. (Plea Tr. 5). This court heard appellant's arguments concerning urine test suppression and found them to be without merit. The conviction is for a violation of R.C. 4511.19(A), driving under the influence. Whether the conviction is designated as an (A)(1) or (A)(2) or (A)(3), or an (A)(4) violation, the sentence is the same. If appellant wishes the misstatement and/or clerical error that he helped to create to be remedied, he has a remedy. He could seek a nuncpro tunc entry from the trial court. The state has consented to this procedure in its response brief. In fact, paperwork subsequent to the plea and sentence already contains the correct subsection (A)(4) rather than (A)(3). Therefore, this assignment of error is overruled.
For the foregoing reasons, the trial court's suppression decisions are affirmed, and appellant's convictions are thereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs.
[1] Unlike the preceding assignment of error, this issue is properly raised in a motion to suppress as it is said to affect the accuracy of the test result if the state cannot prove withdrawal within two hours. See City of Newark v. Lucas (1988), 40 Ohio St.3d 100, 102 (noting that withdrawal within two hours deals with accuracy of the test result and thus affects admissibility which can be raised in a suppression motion) as modified by State v. French (1995), 72 Ohio St. 446, 451 (stating that requirements for admissibility of test results are same in prosecution for a general R.C. 4511.19(A)(1) charge or a per se change).